## Koch v. PennDOT

*Donald J. Smith, deputy attorney general,* for Penn-DOT.

*Bruce G. Baron,* for appellant.

DOWLING, *J.,* September 20, 1991—It is perhaps an inevitable consequence of human nature that laws passed with one regulatory purpose in mind are sometimes employed to an entirely different end—sometimes one which would have appalled the authors of the original bill.[*] Thus it is said Canada, in recent years, decreed that no one in that country should publish or disseminate any material which tends to arouse hatred or contempt towards any person or group on the basis of their race, religion, or ethnic origin—and then found itself aligned de facto with the Iran of Ayatollah Khomeini when Salman Rushdie's book *The Satanic Verses* was banned

---

[*] This invites an extensive discussion on the Constitution, especially the Bill of Rights which, in the interests of judicial economy and reader sanity, we forego.

from Canadian bookstores on the grounds that it defamed the community and the precepts of Islam. While such skewed construction of individual statutes may be an unalterable consequence of jurisprudence, it will remain incumbent upon the courts to distinguish between the legitimate application of a law to a specific circumstance, and those occasions when a rule is enforced in a manner that is inconsistent with its true purpose and intent.

The plaintiff in the instant case, Frederick Koch Jr., according to those facts which are undisputed, allowed his motor vehicle insurance to lapse as of March 11, 1991, because of a temporary inability to pay the premiums. Because the gap in his coverage lasted for more than 21 days, the Commonwealth Department of Transportation, Bureau of Driver Licensing, declared that his registration privileges must be suspended for a period of not less than three months. This decision of the bureau's has remained unaffected by the fact that the plaintiff allegedly has evidence that he secured proper insurance for his vehicle, effective June 10, 1991.

The department bases its position upon two sections of subchapter H of the Pennsylvania Motor Vehicle Financial Responsibility Law entitled, "Proof of Financial Responsibility:"

"(d) *Suspension of registration and operating privilege*

"The Department of Transportation shall suspend the registration of a vehicle if it determines the required financial responsibility was not secured as required by this chapter and shall suspend the operating privilege of the owner or registrant for a period of three months if the department determines that the owner or registrant has operated or permitted the operation of the vehicle

without the required financial responsibility. The operating privilege shall not be restored until the restoration fee for operating privilege provided by section 1960 (relating to reinstatement of operating privilege or vehicle registration) is paid. Whenever the department revokes or suspends the registration of any vehicle under this chapter, the department shall not restore the registration until the vehicle owner furnishes proof of financial responsibility in a manner determined by the department and submits an application for registration to the department, accompanied by the fee for restoration of registration provided by section 1960. This subsection shall not apply in the following circumstances:

"(1) The owner or registrant proves to the satisfaction of the department that the lapse in financial responsibility coverage was for a period of less than 21 days and that the owner or registrant did not operate or permit the operation of the vehicle during the period of lapse in financial responsibility...." 75 Pa.C.S. §1786(d)(1) (emphasis added) and:

"(g) *Defenses*

"(2) No person shall be penalized for maintaining a registered motor vehicle without financial responsibility under subsection (d) if the registration and license plates were surrendered to the Department of Transportation at the time insurance coverage terminated or financial responsibility lapsed." 75 Pa.C.S. §1786(g)(2).

The department alleges that the three-month period of suspension is warranted due to the plaintiff's failure to take advantage of either of the remedial measures provided in §1786(d)(1) or §1786(g)(2). The plaintiff counters with the argument that, as long as the vehicle

under discussion has not been operated during the period of non-coverage (and there appears to be no dispute that it has not), the only requirements for a reinstatement of registration are the provision, by the driver, of proof of insurance and the payment of the $50 reinstatement fee, both of which conditions the plaintiff has said he is willing and able to meet.

We agree with the plaintiff. To say, as the department does, that there would be no need for the paragraphs which provide for an avoidance of all penalties, 75 Pa.C.S. §1786(d)(1) and (g)(2), if the three-month sanction was not intended to apply to all examples of uninsured vehicles, is a misreading of the law. Section 1786(d)(1) and (g)(2) are intended to safeguard those persons whose lack of ready money may lead them to have occasional lapses in their motor-vehicle insurance coverage. But both (d)(1) and (g)(2) refer only to an avoidance of the penalties for a failure to maintain insurance, not to the operation of a vehicle without it, something which is unlawful under any and all circumstances. Since the plaintiff is willing to submit to the prescribed penalties for his breach of proper procedure, the continued suspension of his registration cannot be justified.

The knothole in the statute that appears to have given rise to the difference of opinion in the case at bar is the incorporation of two separate penalties within the single opening sentence of 75 Pa.C.S. §1786(d)—the right to suspend a motorist's *registration* if he fails to maintain financial responsibility, and the second, and distinct, power to suspend his *operating* privileges for three months if he operates his vehicle, or allows it to be operated, without insurance coverage. The latter

penalty is the only one to which the three-month period applies; and we see nothing in the statute's language that indicates that this time limit can be, or was meant to be, transferred to any other sanction. This determination to maintain a distinction between these two penalties is further underlined by the fact that the second sentence of §1786(d) provides for the method of reinstating one's operating privileges while the third sentence sets forth a parallel, but separate, approach to securing a restoration of one's registration. Since this statute was drawn to allow for the fact that one can allow one's insurance to lapse, without compounding the offense by driving the uninsured vehicle in the interim, it would blur the legislative purpose of this law if we were to treat those two transgressions as interchangeable.

It appears to us, from the department's brief, that it has confused the penalty for the operation of a vehicle that lacks appropriate insurance with the suspension of the registration of uninsured drivers. To state that the curative power of §1786(d)(1) would not be necessary if the three-month suspension period did not apply to all procedural breaches of this sort is to ignore the fact that a person could drive an uninsured vehicle during a period of less than 21 days after their insurance lapsed—10 days afterwards, for example. If an accident resulted from this conduct, the driver would be in a poor position to argue that the fact that the 21st day had not yet arrived exonerated him from liability. The simple mechanics of the difference between not having insurance on the one hand, and actually driving an uninsured vehicle on the other, demand that both the procedures and the sanctions differ in such instances—as, indeed, the statute decrees that they do.

We share the plaintiff's concern for the disparate impact that auto insurance requirements impose upon poor—even some not-so-poor—citizens of this Commonwealth. Unfortunately, as long as there is as pressing a need to keep uninsured drivers off the road as there is at present (a need that is exacerbated by the fact that large numbers of our citizens lack any form of health insurance), there is no readily apparent alternative. But it would compound this situation needlessly if we were to extend the period of suspension, of either registration or operating privileges, for those who are law-abiding enough to stay off the road when their insurance lapses beyond the point at which they renew it and pay the requisite fee.

The defendant claims that the plaintiff's assertion that he has secured new insurance "has not been verified by the department and is not accepted as true." It goes without saying that the plaintiff is obliged to provide any standard documentation, such as a copy of the policy or his insurance card, which the department ordinarily requires of citizens to prove their coverage; having done this, and having paid the fee, the suspension should be lifted.

Accordingly, we issue the following

## ORDER

And now, September 20, 1991, we sustain the plaintiff's appeal from the Department of Transportation's imposition of a three-month period of suspension of his registration privileges; subject to the plaintiff's provision to the department of an application for registration; the restoration fee of $50; and proof of current and applicable motor vehicle insurance.